IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT FOOTE, derivatively on behalf of MICRON TECHNOLOGY, INC., <br><br> Plaintiff, <br><br>   v. <br><br> SANJAY MEHROTRA, ROBERT L. BAILEY, RICHARD M. BEYER, PATRICK J. BYRNE, LYNN A. DUGLE, STEVEN J. GOMO, MERCEDES JOHNSON, MARY PAT MCCARTHY, LAWRENCE N. MONDRY, ROBERT E. SWITZ, and MARYANN WRIGHT, <br><br>        Defendants, <br><br>    and <br><br> MICRON TECHNOLOGY, INC., <br><br>        Nominal Defendant. | CIVIL ACTION NO. 21-00169 |

**OPINION**

**Slomsky, J.**                                                        **November 1, 2023**

**TABLE OF CONTENTS**

I.     **INTRODUCTION**.............................................................................................. 3

II.    **BACKGROUND** ................................................................................................. 3

III.   **STANDARDS OF REVIEW** ........................................................................... 5

        **A. Motion to Dismiss Standard** .............................................................. 5

        **B. Demand Futility Standard** ................................................................. 6

**IV.    ANALYSIS** ............................................................................................... 9

    **A.  Count One Fails to Allege a Violation of Section 14(a) of the Securities Exchange Act** ................................................................... 9

        1.  Plaintiff's Allegations on Diversity Are Not Material Misrepresentations ........................................................................... 12

        2.  Plaintiff's Allegations Fail to Support Element One of the Securities Exchange Act Claim .................................................... 16

    **B.  Plaintiff Fails to Meet the Requirements of Demand Futility** ..................... 16

        1.  Plaintiff Fails to Allege that Defendants Face a Substantial Likelihood of Liability ................................................................... 17

        2.  Plaintiff Fails to Make Particularized Factual Allegations Specific to Each Director ................................................................. 21

    **C.  The Court Will Not Exercise Supplemental Jurisdiction over Plaintiff's State Law Claims** ................................................................... 23

**V.    CONCLUSION** ........................................................................................ 25

## I.      INTRODUCTION

This case concerns a derivative action filed by Plaintiff Robert Foote ("Plaintiff" or "Foote") on behalf of Micron Technology, Inc. ("Micron"), a company that designs and manufactures memory chips and storage products.  (Doc. No. 12 at 14.)  Plaintiff Foote is a shareholder of Micron.  (Doc. No. 1 at ¶ 16.)  Defendants are Directors of Micron.  (Id. at ¶¶ 18-62.)  They are: Sanjay Mehrotra, Robert Bailey, Richard Beyer, Patrick Byrne, Lynn Dugle, Steven Gomo, Mercedes Johnson, Mary McCarthy, Lawrence Mondry, Robert Switz, and Maryann Wright ("Defendants").  (Id.)  Micron Technology Inc. is a nominal defendant in this case.  (Id. at 1.)

In his Verified Complaint, Plaintiff alleges claims against Defendants for violations of Section 14(a) of the Securities Exchange Act of 1934 ("Securities Exchange Act") (Count I), Breach of Fiduciary Duties (Count II), Unjust Enrichment (Count III), Waste of Corporate Assets (Count IV), Abuse of Control (Count V), and Gross Management (Count VI).  (See id.)  These claims arise out of allegedly false or misleading statements about Defendants' commitment to diversify Micron's workforce.  (Id. at 24-31.)  In response, Defendants have filed a Motion to Dismiss the Verified Shareholder Derivative Complaint.  (Doc. Nos. 11-13.)

For reasons discussed below, Defendants' Motion to Dismiss will be granted on Count One, the only claim which confers federal jurisdiction over this case.  (Doc. No. 11.)  In addition, the Court will decline to exercise supplemental jurisdiction over the state law claims.  Consequently, the Complaint will be dismissed in its entirety.

## II.      BACKGROUND

On February 9, 2021, Plaintiff filed a Shareholder Derivative Complaint on behalf of Micron against the individual Defendants who are former or current officers, directors, and/or fiduciaries of Micron.  (See Doc. No. 1.)

In his Complaint, Plaintiff avers that Micron's 2018, 2019, and 2020 Proxy Statements contain false and misleading statements regarding Micron's commitment to diversity.  (See id. at ¶5.) Plaintiff further alleges that Defendants' yearly Diversity, Equity, and Inclusion Report ("DEI Report")[1] constitutes "hollow words, given that the Company's workforce has not become meaningfully more diverse during [2018-2020]."  (See id. at ¶ 2.)  Plaintiff also contends that the diversity of senior leadership did not grow during this three-year period.  (Id. at ¶ 3.)  Regarding these shortfalls, Plaintiff notes Micron's failure to retain a sufficiently independent auditor to surveil the company's internal controls and ensure compliance with applicable law.  (Id. at ¶ 118.) As a result, Plaintiff alleges in six Counts that Individual Defendants committed the violations listed above.  (Id. at 51-60.)

On April 30, 2021, Defendants filed a Motion to Dismiss the Complaint and a Supporting Brief.  (Docs. No. 11, 12).  Defendants argue that the Securities Exchange Act does not support Plaintiff's claim, which is "part of a wave of similar poorly-conceived suits filed against major companies in the wake of a national conversation on race."  (Doc. No. 12 at 1.)  In this regard, Defendants assert that Plaintiff has failed to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  (Id. at 28-30.)  In addition, Plaintiff has not properly alleged demand futility[2] as required by Federal Rule of Civil Procedure 23.1(b)(3).  (Id. at 11-27.)

---

[1] DEI Reports are documents which describe: 1) the representation of individuals from a variety of backgrounds, races, genders, sexual orientations, disabilities, or religions in an organization and 2) the training, policies, or practices focused on achieving a more inclusive and fairer environment in the workplace.

[2] Demand Futility under Federal Rule of Civil Procedure 23.1(b)(3) requires a Plaintiff to plead with particularity the demand made upon directors of a company to file suit on behalf of the company, or the reasons that making such a demand would be futile. Demand Futility is described more fully infra.

More specifically, Defendants submit that Plaintiff has not

> offer[ed] . . . a shred of support for his wholly conclusory, unwarranted allegations. The Complaint contains no allegations of management misconduct, discrimination, or bias in connection with Micron's hiring or retention practices, let alone knowledge of or participation by its Board members . . .

(Id. at 3.)

On June 29, 2021, Plaintiff filed a Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss.  (Doc. No. 15.)  On July 29, 2021, Defendants filed a Reply. (Doc. No. 16.)  On December 16, 2022, the Court held a hearing on the Motion to Dismiss with counsel for Plaintiff and Defendants.  (Doc. No. 25.)  Defendants' Motion is now ripe for disposition.

## III.   STANDARDS OF REVIEW

### A.  Motion to Dismiss Standard

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully."  Id. Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a District Court in this Circuit

must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679).  This "plausibility pleading standard" is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

"[A] complaint must do more than allege the plaintiff's entitlement to relief . . . [it must] 'show' such an entitlement with its facts.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (second alteration in original) (citation omitted).  The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. (citation omitted).

### B.  Demand Futility Standard

"The standard for pleading demand futility with particularity under Federal Rule of Civil Procedure 23.1 is more stringent than the standard under Rule 12(b)(6)."  Behrmann v. Brandt, No. CV 19-772-RGA, 2020 WL 4432536, at *3 (D. Del. July 31, 2020); see also Halpert v. Zhang, 966 F.Supp.2d 406, 415 (D.Del. 2013).  Rule 23.1(b) states that a derivative action complaint must:

(1) allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law;

(2) allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack; and

(3) state with particularity:

(A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and

(B) The reasons for not obtaining the action or not making the effort.

Fed. R. Civ. P. 23.1(b). Thus, Rule 23.1(b)(3)(B) requires a plaintiff to plead with particularity the demands made, or the reasons for not making such "effort[s] . . . to obtain the desired action from the directors." Id. This demand requirement "allows the corporate machinery to self-correct problems and to safeguard against frivolous lawsuits." Raul v. Rynd, 929 F. Supp. 2d 333, 340 (D. Del. 2013).

Rule 23.1 "does not create a demand requirement of any particular dimension. On its face, Rule 23.1 speaks only to the adequacy of the shareholder representative's pleadings." Blasband v. Rales, 971 F.2d 1034, 1047 (3d Cir. 1992) (emphasis in original) (quoting Kamen v. Kemper Financial Services, Inc., 500 U.S. 90, 96 (1991)). "Although Rule 23.1 provides the pleading standard for derivative actions in federal court, the substantive rules for determining whether a plaintiff has satisfied that standard 'are a matter of state law.'" King v. Baldino, 409 Fed.Appx. 535, 537 (3d Cir. 2010); see also Blasband, 971 F.2d at 1047. In Kamen, the Supreme Court stated:

The presumption that state law should be incorporated into federal common law is particularly strong in areas in which private parties have entered legal relationships with the expectation that their rights and obligations would be governed by state-law standards . . . Corporation law is one such area.

500 U.S. at 98.  Therefore, "[a] federal court must apply a state's demand-futility exception under Rule 23.1."  <u>Fagin v. Gilmartin</u>, 432 F.3d 276, 285 n. 2 (3d Cir. 2005) (citing <u>Kamen</u>, 500 U.S. at 108-109).  Here, because Micron is incorporated in Delaware, Delaware law will govern the substantive requirements of Plaintiff's demand futility claim.  (<u>See</u> Doc. No. 1 at 6.)

"A basic principle of the General Corporation Law of the State of Delaware is that directors, rather than shareholders, manage the business and affairs of the corporation."  <u>Gupta on behalf of Sonim Techs., Inc. v. Wilkinson</u>, 594 F. Supp. 3d 606, 610-11 (D. Del. 2022) (quoting <u>Spiegel v. Buntrock</u>, 571 A.2d 767, 772-73 (Del. 1990).  "This includes the decision to commence litigation or, alternatively, to abstain from filing suit."  <u>Zomolosky v. Kullman</u>, 640 Fed.App'x. 212, 216 (3d Cir. 2016).  Additionally, "[i]t is clear that the demand requirement is not a mere formality, but rather is an important aspect of Delaware's substantive law."  <u>Blasband</u>, 971 F.2d at 1048.

Under Delaware law, if making a demand on the board of directors would be futile, the demand requirement under Federal Rule of Civil Procedure 23.1(b) will be excused.  <u>See</u> <u>Aronson v. Lewis</u>, 473 A.2d 805, 814-15 (Del. 1984).  Two demand futility tests exist in relevant Delaware case law regarding shareholder derivative actions: the <u>Aronson</u> test and the <u>Rales</u> test.  If an action of the board is challenged, courts generally look to the <u>Aronson</u> test.  <u>Id.</u> at 814.  Under the <u>Aronson</u> test, the demand requirement under Federal Rule of Civil Procedure 23.1 is excused if a reasonable doubt is created that either (1) the directors are disinterested and independent, or (2) the challenged acts of the directors were a result of the board's valid business judgment.  <u>Id.</u>; <u>see also</u> <u>Brehm v. Eiser</u>, 746 A.2d 244, 253 (Del. 2000) (holding that review over decisions applying Rule 23.1 is <u>de novo</u> and plenary, not limited to abuse of discretion).  However, if inaction by the board is challenged, courts look to the <u>Rales</u> test.  Under the <u>Rales</u> test, a plaintiff must allege

"particularized factual allegations" specific to each director that "create a reasonable doubt that . . . the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." Rales, 634 A.2d at 934.  Here, the Rales test applies.

In Ryan v. Gifford, the Court opined that meeting the demand futility standard is "a difficult feat under Delaware Law."  918 A.2d 341, 352 n.23 (Del. Ch. 2007).  Further, the standard under Rales examines the capability of the existing board "at the time the complaint is filed."  Id. at 932-34.

## IV.   ANALYSIS

As noted earlier, Defendants move to dismiss Plaintiff's claims in its Shareholder Derivative Action.  (Doc. No. 12.)  Their argument on Plaintiff's federal claim alleged in Count One, which is the violation of Section 14(a) of the Securities Exchange Act, will be considered first.  Next, Plaintiff's state law claims will be addressed.

### A.  Count One Fails to Allege a Violation of Section 14(a) of the Securities Exchange Act

In his Complaint, Plaintiff alleges that Defendants violated Section 14(a) of the Securities Exchange Act when they issued proxy statements allegedly misrepresenting the diversity in Micron's workforce and leadership from 2018-2020.  (Doc. No. 1 ¶ 153.)  Plaintiff avers that:

> under the direction and watch of the Directors, the 2018, 2019, and 2020 Proxy Statements failed to disclose, inter alia, that: (1) despite public assertions to the contrary diversity was not a key priority of the Company; (2) despite assertions to the contrary the Company was not meaningfully diversifying its workforce; (3) despite assertions to the contrary the Company was not diversifying its leadership or its Board of Directors; (4) that the Company failed to maintain adequate internal controls, and (5) that the independent auditor the Company repeatedly reselected to evaluate its internal controls was neither independent nor effective at ensuring the adequacy of the Company's internal controls.

(Id.)  In his Complaint, Plaintiff uses statistics from Micron's Diversity, Equity, and Inclusion ("DEI") Reports to allege that Micron's workforce and leadership "ha[ve] not become

meaningfully more diverse" from 2018-2020.  (Id. at ¶ 2.)  In particular, Plaintiff points to data

from Micron's DEI Reports showing that the number of Black and Hispanic employees did not

increase from 2018-2020.[3]  (Id. at ¶¶ 2-3.)  In light of this data, Plaintiff alleges that the following

statements appearing in the proxies, and others similar to them, were misrepresentations:

- "Micron is focused on cultivating a diverse and inclusive culture."  (Id. at 31.)

- "[T]he Governance and Sustainability Committee considers … the diversity of backgrounds, experience, and skills on the Board."  (Id. at 33.)

- "The … Committee is committed to continuing to identify and recruit … director candidates with diverse experiences, perspectives, and backgrounds to join our Board."  (Id.)

- "[T]he … Committee takes into account the personal characteristics, experience, and skills of current and prospective directors, including gender, race, and ethnicity, to ensure that our Board comprises a broad range of perspectives, and measures success by the range of viewpoints represented on the Board."  (Id.)

- "The Board has tasked the Company's management team with taking a proactive approach to diversity, equality and inclusion."  (Id. at 34.)

- Micron's executive compensation program's "primary long-term objective is to drive sustainable value creation for our shareholders by attracting, retaining, developing, and motivating a diverse group of top executive talent."

(Id.)

    Finally, Plaintiff alleges that "[Micron] was damaged as a result of the Individual Defendants'

material misrepresentations and omissions in the 2018, 2019, and 2020 Proxy Statements."  (Id. at

¶ 158.)  Plaintiff explains that, had investors known the proxy statements contained false

---

[3] The employees of Micron in 2018 were 3% Black and 4% Hispanic.  (Doc. No. 1 at ¶ 95.)  By the end of 2020, little had changed.  (See id.)  In 2020, 3% of the workforce was Black, and 4.6% was Hispanic.  (See id.)  The number of White employees decreased from 2018-2020, dropping from 70% to 66.6%.  (See id. at 28.)  Further, Asian representation increased during the same three years from 21% to 23.4%.  (Id.)  These trends largely paralleled Micron's management positions, senior leadership, and Board of Directors.  (Id. at 30.)

information about diversity, "they would not have continued to re-elect the board of directors, approve their compensation packages, and retain the same 'independent' auditor year after year." (Doc. No. 15 at 17.)  In attempting to reveal the link between the alleged misrepresentations and harm, Plaintiff points to "the detailed data in the DEI Reports" as proof that the misstatements led the Defendants to "seek and win reelection on false pretenses."  (Id.)

Defendants assert to the contrary that Plaintiff is mistaken about Micron's commitment to diversity. (See Doc. No. 12 at 12.)  Their efforts to create a diverse workforce are reflected in the very reports relied upon Plaintiff in the Complaint.  (Id.)  These efforts include:

> funding numerous STEM[4] outreach programs; hosting DEI events; requiring all interview slates include at least two candidates from underrepresented backgrounds; working with historically Black colleges and universities to secure a diverse pool of candidates; using AI technology to draft job descriptions that reduce bias; and allying with the National Society of Black Engineers and the Society of Hispanic Professional Engineers.

(Id.)  Further, Defendants submit that Plaintiff also incorrectly characterizes the diversity currently on Micron's Board.  (Id.)

> Although Plaintiff acknowledges that Micron's CEO, Mr. Mehrotra, is of Southeast Asian descent, he claims that all other Board members are white. This is not correct. Ms. Johnson, a former Board member, was born and raised in Argentina and identifies as Latina. In addition, Linnie Haynesworth, a Black woman, was appointed to the Board—following a lengthy, months-long process—six days after Plaintiff filed the Complaint. And, given Ms. Haynesworth's appointment, half of Micron's current Board members are now women.

(Id.)

Next, Defendants submit that Plaintiff has failed to allege with sufficient particularity false or misleading representations in the proxy statements concerning the diversity goals of Micron.  (Id. at 25.)  Defendants argue that "[the proxy statements] do not claim that Micron has already

---

[4] STEM is short for "Science, Technology, Engineering, and Math."  See https://www.ed.gov/stem.

accomplished its diversity goals nor do they commit [Micron] to achieving a certain representation level by a specific date."  (Id.)  Instead, Defendants assert that the proxy statements are "long-term objectives" and "aspirational" goals, not misrepresentations.  (Id.)  Moreover, Defendants submit that Plaintiff has failed to allege sufficient facts to show that the proxy statements were an "essential link" causing the company harm.  (Id. at 27-28.)

Section 14(a) of the Securities Exchange Act forbids "any person . . . to solicit any proxy" in violation of a Securities Exchange Act rule.  15 U.S.C. § 78n(a)(1).  In this regard, Section 240.14(a)-9 provides that:

> [n]o solicitation subject to this regulation shall be made by means of any proxy statement ... containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading.

17 C.F.R. § 240.14a-9(a).  To establish a violation of Section 14(a), three elements must be met: (1) the proxy solicitation was an "essential link" in carrying out the harm to the company, (2) the proxy statement contained a material misrepresentation or omission, and (3) the defendant acted with the requisite state of mind.  See In re Reliance Sec. Litig., 135 F.Supp.2d 480, 511 (D. Del. 2001).

### 1.   Plaintiff's Allegations on Diversity Are Not Material Misrepresentations

Starting with the second element−whether the proxy statement contained a material misrepresentation−Plaintiff has failed to allege material misrepresentations.  As noted, the crux of Plaintiff's allegations is that Defendants issued proxy statements stating long term diversity goals while failing to "meaningfully" increase the diversity of its workforce and leadership between 2018-2020.  (Doc. No. 1 at ¶ 2.)  But the aspirational diversity statements as quoted above are not material misrepresentations under Section 14(a).

In <u>Kiger v. Mollenkopf</u>, the court addressed nearly identical allegations made in proxy statements in a case brought by a shareholder derivatively asserting a violation of Section 14(a) of the Securities Exchange Act.  No. 21-409-RGA, 2021 WL 5299581, at *2 (D. Del. Nov. 15, 2021).  The plaintiffs in <u>Kiger</u> alleged that the following proxy statement was a material misrepresentation: "[t]he Governance Committee's goal is to assemble a board of directors that brings to us a diversity of perspectives and skills."  <u>Id.</u>  The court found that the proxy statement at issue was an aspirational statement of a goal, constituting no more than "inactionable puffery."  <u>Id.</u> at *3 (quoting <u>In re Aetna, Inc. Sec. Litig.</u>, 617 F.3d 272, 283 (3d Cir. 2010)).  In dismissing the plaintiffs' Section 14(a) claim, the court held that the proxy statement was not an actionable material misrepresentation.  <u>Id.</u> at *2.

The Court in <u>City of Pontiac Police & Fire Ret. Sys. v. Jamison</u> dealt with similar proxy statements: "[d]iversity and inclusion play a key role in moving our business forward" and "[w]e believe that a diverse and inclusive workplace will enhance our ability to attract and retain the best talent to better serve our customers."  No. 3:20-CV-00874, 2022 WL 884618, at *2 (M.D. Tenn. Mar. 24, 2022).  In that case, the court dismissed plaintiff's derivative action under Section 14(a) because the plaintiff failed to allege that any material misrepresentation was made in these proxy statements.  <u>See id.</u> at *1.  The court held that the statements were not false or misleading misrepresentations, as "statements regarding diversity are often viewed by the Courts to be mere statements of corporate aspiration that are immaterial to a reasonable investor."  <u>Id.</u> at *16.

Likewise, in <u>Ocegueda on behalf of Facebook v. Zuckerberg</u>, the court came to the same conclusion and dismissed the plaintiff's shareholder derivative complaint.  526 F. Supp. 3d 637, 651 (N.D. Cal. 2021).  In <u>Ocegueda</u>, the court addressed identical claims under Section 14(a) alleging that the defendant's proxy statements were material misrepresentations regarding

commitments to diversity.  Id.  Specifically, the proxy statements included commitments by defendant to "building a workforce that is as diverse as the communities [it] serves."  Id. at 643. The court held that "the plaintiff did not plausibly plead an actionable false statement" because the statement was merely "non-actionable puffery or aspirational (and hence immaterial)."  Id. at 651.

Again, in Klein v. Ellison, the court dismissed the derivative action and held that the plaintiffs failed to plead facts showing that the proxy statements contained material misrepresentations.  No. 20-CV-04439-JSC, 2021 WL 2075591, at *4 (N.D. Cal. May 24, 2021). The court held that "[p]laintiffs have not alleged particularized facts that support an inference that the [the proxy statements] that [defendant] 'actively seek[s] women and minority candidates from the pool from which director candidates are chosen' was false or misleading."  Id.  Other courts have come to a similar conclusion.  See, e.g., Elliemaria Toronto Esa v. Nortonlifelock Inc., No. 20-CV-05410-RS, 2021 WL 3861434, at *6 (N.D. Cal. Aug. 30, 2021) (dismissing shareholder derivative action alleging violation of Section 14(a) of the Securities Exchange Act as a result of proxy statements regarding diversity objectives); Lee v. Frost, No. 21-20885-CIV, 2021 WL 3912651, at *15 (S.D. Fla. Sept. 1, 2021) (granting defendants' motion to dismiss derivative action alleging refusal to nominate or hire Black or Latinx individuals to the board despite social justice initiatives); In re Danaher Corp. S'holder Derivative Litig., 549 F. Supp. 3d 59, 75 (D.D.C. 2021) (dismissing a derivative action concerning diversity-related statements); EP Medsystems, Inc. v. EchoCath, Inc., 235 F.3d 865, 872 (3d Cir. 2000) ("opinions, motives and intentions constitute no more than puffery.").

Just as the courts in the cases described above have held that the proxy statements did not contain actionable material misrepresentations, so too does this Court find here.  The proxy statements in those cases essentially were all aspirational, non-actionable puffery with long-term

objectives.  They were not commitments or promises, and neither are any of the proxy statements at issue here.  In this regard, Defendants have not engaged in misrepresentations. They merely highlight an ongoing commitment to promoting diversity.  (Doc. No. 1 at ¶ 98.)

For example, Defendants' proxy statement noting that "Micron is focused on cultivating a diverse and inclusive culture" is a broad aspirational goal, not an actionable representation.  (Id.) The language "the Governance and Sustainability Committee considers . . . the diversity of backgrounds, experience, and skills on the Board" is similarly not a promise, but a non-actionable recognition of one factor taken into consideration when naming board members.  (Id. at ¶ 102.) Again, the statement "[t]he … Committee is committed to continuing to identify and recruit … director candidates with diverse experiences, perspectives, and backgrounds to join our Board" merely represents Defendants long-term goal of attaining more diversity on their Board.  (Id. at ¶ 103.)  The statement that "the Board has tasked the Company's management team with taking a proactive approach to diversity, equity, and inclusion" is akin to the non-actionable, long-term goals contained in the proxy statements in Ocegueda.   (Id. at ¶ 105.)  And the goal of recruiting a "diverse group of top executive talent" is also a "long-term objective."  (Id. at ¶ 106.)

Furthermore, the fact that the number of Black and Hispanic employees and leaders did not increase between the years of 2018-2020 does not lead to the conclusion that the proxy statements are misleading or material misrepresentations.  Micron's own 2018 DEI Report explicitly acknowledged, "we've realized . . . not all groups are well represented within our workforce." (Doc. No. 15 at 3.)  But this shortfall does not mean that Defendants did not strive to achieve its aspirational goal of diversity in its workplace and leadership.  Thus, no facts are alleged by Plaintiff to show that the proxy statements contain material misrepresentations about Micron's diversity in

the workplace.  For this reason, Plaintiff's claim under Section 14(a) fails.  Simply put, the second element, material misrepresentations, is not met.

> 2.  Plaintiff's Allegations Fail to Support Element One of the Securities Exchange Act Claim

While the Court will dismiss Count One because the second element has not been met, Plaintiff also fails to allege the first element of a Section 14(a) Claim: an essential link between the proxy statement and the harm to the company.  Plaintiff merely speculates that certain reelections or ratifications occurred as a result of the representations in the Proxy Statements. Though reelection and compensation plans can harm a company and fall under Section 14(a), Plaintiff does not articulate how the Proxy Statements were links—much less "essential" ones—in gaining investor support to accomplish the alleged harms.  See Ocegueda, 526 F.Supp.3d at 652 ("Plaintiff alleged harm in the form of reelection of directors, the approval of compensation to directors who helped perpetuate the unlawful practices . . . These conclusory allegations do not establish causation.").  Nothing in the DEI Report or the Complaint leads to the conclusion that the proxy statements convinced investors to vote one way or the other.  Thus, Plaintiff's unsupported claim to the contrary is wholly conclusory.

Accordingly, Plaintiff's failure to allege sufficient facts to support the first and second elements of the Count One Securities Exchange Act claim will result in the dismissal of that claim. And since two elements are not met, there is no need to consider the third element of scienter.

**B.  Plaintiff Fails to Meet the Requirements of Demand Futility**

Plaintiff also contends here that making a demand on the Defendant Directors of Micron to file a lawsuit for a violation of the Security Exchange Act would be futile because they would not exercise disinterested business judgment.  (Doc. No. 1 at ¶ 131.)  Plaintiff further asserts that making a demand would be futile because "Defendants control the company and are beholden to

16

each other." (Id. at ¶ 141.)  But for reasons stated infra, Plaintiff fails to meet the demand futility requirements of Federal Civil Rule of Procedure 23.1 on the Securities Exchange Act Claim in Count One.

As noted earlier, Federal Rule of Civil Procedure 23.1 governs shareholder derivative actions such as this one. When asserting a shareholder derivative action, a plaintiff must "state with particularity any effort by the plaintiff to obtain the desired action from the directors or comparable authority . . . and the reasons for not obtaining the action or not making the effort."  Fed. R. Civ. P. 23.1(b)(3).  If making such a demand would be futile, the demand requirement of Rule 23.1(b)(3) will be excused.  See Aronson, 473 A.2d at 814-15.

Here, as noted previously, to show that making the demand would have been futile, a plaintiff must allege "particularized factual allegations" specific to each director that "create a reasonable doubt that . . . the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand."  Rales, 634 A.2d at 934.  One way to meet this standard is by showing that a defendant director faced a "substantial likelihood of liability on any of the claims that are subject to the litigation demand."  United Food & Com. Workers Union & Participating Food Indus. Empls. Tri State Pension Fund v. Zuckerberg, 262 A.3d 1034, 1059 (Del. 2021).  To establish a "substantial likelihood of personal liability," a plaintiff must allege with "particularity actual director involvement in a decision . . . that violated positive law," or a "conscious[] fail[ure] to act after learning about evidence of illegality."  South v. Baker, 62 A.3d 1, 14-15 (Del. Ch. 2012).

       1.   Plaintiff Fails to Allege that Defendants Face a Substantial
             Likelihood of Liability

Plaintiffs allege that Defendants are interested parties who "fac[ed] a substantial likelihood of liability as a result of the scheme they engaged in . . . which caused [Micron] to make false and

misleading statements . . ."  (Doc No. 1 at ¶ 131.)  However, in the Motion to Dismiss, Defendants submit they did not face a substantial likelihood of liability for a violation of the Securities Exchange Act because "Micron's Certificate of Incorporation exculpates directors from personal liability to the fullest extent permitted by law."  (Doc. No. 12 at 22.)  As a result, Defendants argue that as directors, they are exculpated from liability, save for claims for breach of the duty of loyalty, bad faith, or intentional misconduct or knowing violations of the law.  (Id.)

Under Section 102(b)(7) of Delaware Law, a corporation may adopt a charter provision eliminating board members' personal liability to the corporation or stockholders for breaches of fiduciary duty sounding in negligence.  See Del. Code Ann. tit. 8, § 102(b)(7) (West 2022); see also Smith on Behalf of Zion Oil & Gas, Inc. v. Carrillo, No. CV 18-1399-RGA, 2019 WL 6328033, at *3 (D. Del. Nov. 26, 2019).  Section 102(b)(7) states in relevant part:

> A provision eliminating or limiting the personal liability of a director or officer to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director or officer, provided that such provision shall not eliminate or limit the liability of:
>
> > (i) A director or officer for any breach of the director's or officer's duty of loyalty to the corporation or its stockholders;
> >
> > (ii) A director or officer for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law;

Del. Code Ann. tit. 8, § 102(b)(7)(i)-(ii) (West 2022).  If a corporation includes a 102(b)(7) provision in its charter, its board members will only personally liable for breaches of the duty of loyalty, actions taken in bad faith, or intentional, knowing violations of law.  See id.

In accordance with this provision, Micron's Articles of Incorporation state:

> No director shall be liable to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, provided that this provision shall not eliminate or limit the liability of a director (i) for any breach of director's duty of loyalty to the corporation or its stockholders, (ii) for acts or omissions not in good faith which involve intentional misconduct or knowing violations of law . . .

(Doc. No. 13-2 at 44.)

Here, Plaintiff fails to establish demand futility because the allegations regarding substantial likelihood of liability are insufficient. Under the provision in the Article of Incorporation, board members have personal liability to the corporation or stockholders for breaches of the duty of loyalty, actions taken in bad faith, or intentional, knowing violations of law. See id. However, here Plaintiff has alleged that the breach of fiduciary duty is based on negligence. (See Doc. No. 1 at ¶ 151.)

In response to Defendant's Motion to Dismiss, Plaintiff contends that his claims do not stem from negligence, but instead from a breach of the duty of loyalty "which cannot be exculpated under Delaware law." (Doc. No. 15 at 19) (citing In re Reliance Sec. Litig., 91 F. Supp. 2d 706, 732 (D. Del. 2000)). But the Complaint alleges a different story in Count One. It specifically couches the Count One Section 14(a) claim in negligence – not on a breach of the duty of loyalty. (Doc. No. 1 at ¶ 151) ("The claims made pursuant to Section 14(a) … are based solely on negligence."). Nowhere in the Section 14(a) claim is a breach of the duty of loyalty expressly or impliedly raised based on any ground other than negligence. (See Doc. No. 1. at ¶¶ 149-59.) Therefore, Plaintiff's argument regarding the breach of the duty of loyalty is unavailing.[5]

Courts have frequently dismissed shareholder derivative claims which fail to establish a substantial likelihood of liability due to a Section 102(b)(7) exculpatory provision in the

---

[5] Micron's Articles of Incorporation are not contained in the four corners of the Complaint. (See Doc. No. 1.) However, it may be considered in deciding the sufficiency of a complaint to state a claim for relief. "[O]n a motion to dismiss the Court is free to take judicial notice of certain facts that are of public record if they are provided to the Court by the party seeking to have them considered." Diceon Elecs., Inc. v. Calvary Partners, L.P., 772 F. Supp. 859, 861 (D. Del. 1991); see also In re Wheelabrator Techs. Inc. S'holders Litig., No. C.A. 11495, 1992 WL 212595, at *11-12 (Del. Ch. Sept. 1, 1992) (taking judicial notice of certificate of incorporation of a Delaware corporation at the motion to dismiss stage). In addition, Micron's Certificate of Incorporation is filed of public record. The Certificate is filed with the office of the Secretary of State of Delaware. See Del. Code Ann. tit 8, § 101.

defendant's certificate of incorporation.  For example, in <u>Smith on behalf of Zion Oil & Gas, Inc.</u>, the defendants' certificate of incorporation included such a provision under Delaware law, limiting director liability to "bad faith, intentional misconduct, or knowing violations of law."  No. CV 18-1399-RGA, 2019 WL 6328033, at *8 (D. Del. Nov. 26, 2019).  In that case, the complaint alleged claims solely based on negligence which were exculpated under the Section 102(b)(7) provision. <u>See</u> <u>id.</u>  Because the plaintiffs did not plead any inference of "bad faith, intentional misconduct, or knowing violations of law," the court dismissed the shareholder derivative complaint as the plaintiffs failed to allege a substantial likelihood of liability.  <u>Id.</u>

Likewise, in <u>In re Wells Fargo & Co. S'holder Derivative Litig.</u>, the court dismissed the shareholder derivative complaint because plaintiffs failed to demonstrate that defendant directors faced a substantial likelihood of liability.  No. 20-CV-08750-MMC, 2022 WL 345066, at *5 (N.D. Cal. Feb. 4, 2022).  In <u>Wells Fargo</u>, the certificate of incorporation also tracked the language of Section 102(b)(7), stating that

> A director of the corporation shall not be personally liable to . . . the corporation or its stockholders . . . for breach of fiduciary duty . . . except for . . . acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law.

<u>Id.</u> at *4. The court held that defendants' "charter exempts directors from liability for negligent conduct," and plaintiffs alleged only negligence in the complaint.  <u>Id.</u> at *5.  Therefore, the complaint failed to show a substantial likelihood of liability, and the claim was dismissed.  <u>Id.</u>

Here, because Defendants are exculpated from claims arising from negligence under Micron's Articles of Incorporation, Plaintiff must plead with particularity a non-exculpated claim, such as breach of loyalty, bad faith, intentional misconduct, or knowing violations of law.  <u>See</u> <u>In re Morton's Rest. Grp., Inc. S'holders Litig.</u>, 74 A.3d 656, 663-64 (Del. Ch. 2013) (holding that plaintiffs must plead a non-exculpated claim due to the exculpatory provision under Section

102(b)(7)); In re Cornerstone Therapeutics Inc, S'holder Litig., 115 A.3d 1173, 1185 (Del. 2015) ("The purpose of Section 102(b)(7) was to "free[ ] up directors to take business risks without worrying about negligence lawsuits.").

Plaintiff has not done so.  As noted, the Complaint here specifically states that the Section 14(a) claim is based solely on negligence.  And, just as the certificate of incorporation in Smith exculpated the directors from negligence claims, Micron's Certificate also exculpates Defendants from liability for negligence claims such as this one.  In fact, in his Complaint, Plaintiff disclaims any allegations of fraud, knowing conduct, or recklessness on the part of Defendants for the violation of Section 14(a) claim.  (See Doc. No. 1 at ¶ 97 n.3.)  Thus, Plaintiff has failed to meet the demand futility standard when alleging a substantial likelihood of liability.

2.   Plaintiff Fails to Make Particularized Factual Allegations
      Specific to Each Director

Further, Plaintiff has failed to make particularized factual allegations specific to each director which would create doubt that Defendants would exercise disinterested and independent business judgment.  In his Complaint, Plaintiff alleges that the Individual Director Defendants "signed" and "solicited" the 2018-2020 proxy statements.  (Id. at ¶¶ 97-117.)  Further, when addressing "Demand Futility Allegations," Plaintiff avers that the Director Defendants are "unable to impartially investigate the charges and decide whether to pursue action against themselves and the other perpetrators of the scheme."  (Id. at ¶ 131.)  Plaintiff only asserts the following demand futility allegation for each Director Defendant in nearly identical language:

> Demand is futile on Defendant Mehrotra for the following, additional reasons. Defendant Mehrotra has served as the Company's President, CEO, and as a member of the Board since May 2017. He also serves as a member of the Finance Committee. Therefore, as the Company admits, he is a non-independent director. The Company provides Defendant Mehrotra with his principal occupation, and he has received and continues to receive substantial compensation, including $19,995,488 during the fiscal year ended September 3, 2020. Defendant Mehrotra,

as CEO, was ultimately responsible for the many false and misleading statements and omissions that were made in the 2018, 2019, and 2020 Proxy Statements, all of which he solicited as a member of the Board. As the Company's highest officer and as a trusted Company director, he conducted little, if any, oversight of the Company's engagement in the scheme to issue false and misleading statements, consciously disregarded his duties to monitor internal controls over engagement in the scheme, and consciously disregarded his duties to protect corporate assets. He cannot impartially consider a demand to take action against himself for causing the Company to award him excessive and unjust compensation. Therefore, Defendant Mehrotra breached his fiduciary duties, he faces a substantial likelihood of liability, he is not independent or disinterested, and demand upon him is futile and excused.

(Id. at ¶ 133.)

Here, the allegations regarding each Director are conclusory and unsupported by particularized facts showing that they could not exercise disinterested business judgment. First, Plaintiff's allegation that the Director Defendants receive "substantial compensation" as CEO's, Directors, Chairs, or Members of Committees does not demonstrate that they could not exercise disinterested business judgment. As the court noted in Freedman v. Adams, "[g]enerally, the fact that directors receive customary compensation for their service on the Board does not lead to an inference of a material conflict." No. CIV.A. 4199-VCN, 2012 WL 1345638, at *6 (Del. Ch. Mar. 30, 2012). Although Plaintiff argues that the "compensation [of the Director Defendants] was also excessive in comparison to comparable companies," he does not provide any factual support for this contention. (Doc. No. 1 at ¶ 132.) Plaintiff also has not alleged any particularized facts showing that this "substantial compensation" was substantially more than a customary director's compensation.

Second, Plaintiffs' allegations that individual Defendants' positions at Micron preclude them from exercising disinterested business judgment are without merit. For example, Plaintiff alleges that Mr. Mehrotra, as CEO of Micron, or Defendant Switz, as Chair of the Compensation Committee, "cannot impartially consider a demand to take action against himself for causing the

Company to award him excessive and unjust compensation." (See id. at ¶ 138.) However, the fact that certain individual Defendants hold positions such as CEO, Director, Chair, or Committee Member does not indicate a lack of independence or interest. "Under Delaware law, merely being employed by a corporation is not, by itself, sufficient to create a reasonable doubt as to the independence of a director." In re NutriSystem, Inc. Derivative Litig., 666 F. Supp. 2d 501, 515 (E.D. Pa. 2009). Additionally, "[m]ere membership on a committee or board, without specific allegations as to defendants' roles and conduct, is insufficient to support a finding that directors were conflicted." City of Pontiac Police & Fire Ret. Sys., No. 20-CV-06794-LHK, 2021 WL 2711750, at *7.

Finally, Plaintiff notes that Defendants Switz, Beyer, and Wright cannot exercise disinterested business judgment because they hold positions on the Compensation Committee and approved Defendant Mehrota's "excessive compensation." (Doc. No. 1 at ¶¶ 133-39.) However, mere membership on the Micron board of directors or Compensation Committee does not establish that the individual Defendants are unable to exercise disinterested business judgment or are "beholden to each other." Accordingly, Plaintiff has not met the demand futility requirement of Federal Rule of Civil Procedure 21(b), and Count One will be dismissed.

### C.  The Court Will Not Exercise Supplemental Jurisdiction over Plaintiff's State Law Claims

Next, Plaintiff alleges five state law claims, including Breach of Fiduciary Duty (Count Two), Unjust Enrichment (Count Three), Waste of Corporate Assets (Count Four), Abuse of Control (Count Five), and Gross Management (Count Six). (Id. at ¶¶ 178-192.)

Under 28 U.S.C. § 1367(a), district courts have "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

23

For a court to exercise supplemental jurisdiction, "(1) [t]he federal claims must have substance sufficient to confer subject matter jurisdiction; (2) [t]he state and federal claims must derive from a common nucleus of operative fact; and (3) the plaintiff's claims [must be] such that [s/]he would ordinarily be expected to try them all in one judicial proceeding." Poole v. Marks, 441 F. App'x 854, 858 (3d Cir. 2011) (quoting Pryzbowski v. U.S. Healthcare, Inc., 245 F.3d 266, 275 (3d Cir. 2001)).  However, the exercise of supplementary jurisdiction is within the discretion of the Court. As stated by the Third Circuit in Patel v. Meridian Health Sys., Inc., the court may decline to exercise supplementary jurisdiction if one of four factors exists:

(1) The claim raises a novel or complex issue of state law,

(2) The claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) The district court has dismissed all claims over which it has original jurisdiction, or

(4) In exceptional circumstances, there are other compelling reasons for declining jurisdiction.

666 F. App'x 133, 136 (3d Cir. 2016).

Here, original jurisdiction is based on federal question jurisdiction arising from the Securities Exchange Act claim alleged in Count One.  (See Doc. No. 1 at ¶¶ 12-13.)  The balance of the claims are state law claims.  (See id.)  The Court will decline to exercise supplemental jurisdiction over the state law claims because the claim over which the Court has original jurisdiction is being dismissed.  In addition, "[n]o particular prejudice, nor much additional expense, would result from any additional delay because Plaintiff[] can easily file similar [claims] in state court."  Conf. of Presidents of Major Italian Am. Orgs., Inc. v. City of Phila., No. CV 21-1609, 2022 WL 118118, at *9 (E.D. Pa. Jan. 12, 2022), aff'd, No. 22-1116, 2023 WL 1069704 (3d Cir. Jan. 27, 2023). Indeed, at this early stage of litigation, Plaintiff may easily file his state law claims in state court.

24

Therefore, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims since there is no justification for doing so under the four-prong test noted in <u>Patel</u>.

V.   **CONCLUSION**

For the foregoing reasons, Plaintiff has failed to state a claim or allege demand futility as required under Rule 23.1(b)(3). Therefore, Defendants' Motion to Dismiss (Doc. No. 11) will be granted.  Furthermore, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.